Filed 3/28/13  P. v. Garcia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JULIAN GARCIA ,<br><br>    Defendant and Appellant. | D060032<br><br><br>(Super. Ct. No. SCD232693) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

I.

INTRODUCTION

A jury found Julian Garcia guilty of burglary (Pen. Code, § 459)[1] (count 1) and receiving a stolen vehicle (§ 496d) (count 2).  The trial court suspended imposition of sentence and placed Garcia on three years of formal probation subject to various conditions, including that he serve 365 days in county jail.

_____

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

On appeal, Garcia claims that the prosecutor engaged in racial and ethnic discrimination in the exercise of his peremptory challenges to select the jury in this case and that the trial court committed reversible error by denying his motions pursuant to *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), overruled in part by *Johnson v. California* (2005) 545 U.S. 162, contesting three of the prosecutor's peremptory challenges. We affirm the judgment.

## II.

## FACTUAL BACKGROUND[2]

On March 2, 2011, at approximately 2:30 a.m., Garcia broke into a business named Apricorn and stole computer equipment. Police responded to Apricorn's alarm and arrested Garcia, who was hiding in some nearby bushes. Police discovered a van at the scene that had been stolen either earlier that morning or the previous day. A search of the van revealed computer equipment that belonged to Apricorn and burglary tools that did not belong to the owner of the van.

## III.

## DISCUSSION

*The trial court did not err in denying Garcia's* Batson/Wheeler *motions*

Garcia contends that that the trial court erred in denying his three *Batson/Wheeler* motions, in which he contended that the prosecutor had used peremptory challenges to strike potential jurors based on their race and/or ethnicity.

---

[2]    We provide an abbreviated summary of the facts of the underlying offenses because they are not relevant to Garcia's claims on appeal.

A.    *Governing law and standard of review*

"Both the state and federal Constitutions prohibit the use of peremptory challenges to remove prospective jurors based on group bias, such as race or ethnicity.  (See [*Batson, supra,* 476 U.S. at p. 97]; [*Wheeler*, *supra*, 22 Cal.3d at pp. 276–277].)"  (*People v. Davis* (2009) 46 Cal.4th 539, 582.)  "Doing so violates both the equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution.  [Citations.]"  (*People v. Lenix* (2008) 44 Cal.4th 602, 612 (*Lenix*).)

A party who contends that his opponent is utilizing his peremptory challenges in a discriminatory fashion may raise a motion pursuant to *Batson* and *Wheeler* (a "*Batson*/*Wheeler* motion").  In *People v. Riccardi* (2012) 54 Cal.4th 758 (*Riccardi*), the California Supreme Court outlined the well-established three-step process that governs a trial court's analysis of a *Batson/Wheeler* motion:

> "Procedures governing motions alleging the discriminatory use of peremptory challenges are settled.  'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  [Citation.]  Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes.  [Citations.]  Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination."  [Citation.]'  [Citation.]"  (*Riccardi, supra*, at p. 786.)

The *Riccardi* court explained the factors that a trial court may consider in determining whether a prosecutor has acted with discriminatory intent in exercising a peremptory challenge:

3

" '[T]he critical question in determining whether a [defendant] has proved purposeful discrimination' at a third-stage inquiry 'is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." [Citation.] In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' [Citation.] ' "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " ' [Citation.]" (*Riccardi, supra*, 54 Cal.4th at p. 787.)

A reviewing court applies a deferential standard of review in analyzing a trial court's finding of fact on the "ultimate question" of whether a prosecutor acted with discriminatory intent in exercising a peremptory strike:

"[B]ecause the trial court is 'well positioned' to ascertain the credibility of the prosecutor's explanations and a reviewing court only has transcripts at its disposal, on appeal ' "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal" and will not be overturned unless clearly erroneous.' [Citation.]" (*Riccardi, supra*, 54 Cal.4th at p. 787.)

4

B.      *Factual and procedural background*

During voir dire, after having exercised eight of his 10 allotted peremptory challenges, the prosecutor indicated that he was satisfied with the composition of the potential jury. However, after defense counsel exercised a peremptory challenge to excuse one of the potential jurors, the prosecutor exercised his ninth peremptory challenge as to Juror No. 26. Defense counsel raised an objection to the prosecutor's challenge. The court held a sidebar conference, and then excused the prospective jurors for the day. Outside the presence of the prospective jurors, defense counsel indicated that he was raising a *Batson/Wheeler* motion as to the prosecutor's challenge to Juror No. 26. The court said that it would consider the motion the following day.

The next day, outside the presence of the jury panel, the court held a hearing on Garcia's *Batson/Wheeler* motion. Defense counsel indicated that he believed that the prosecutor was "eliminating a . . . cross-section of our community" through the exercise of his peremptory challenges. Defense counsel continued, stating that he had "let the first few Latino challenges go," but that he thought there was no basis for the prosecutor's request to excuse Juror No. 26, other than her race. Defense counsel explained that he believed that the prosecutor had shown a pattern of excluding "Latinos on the jury pool." After the court asked defense counsel to which jurors he was referring, defense counsel stated that the prosecutor had excused Juror Nos. 3 and 15, both of whom defense counsel believed were at least partially of Latino descent. The court responded that Juror No. 3 appeared to be Caucasian, and that Juror No. 15 appeared to be Asian, and observed that neither Juror No. 3 nor Juror No. 15 had a Latino surname. Defense

5

counsel then noted that the prosecutor had also excluded a prospective juror who appeared to be African American, and that case law established that a *Batson*/*Wheeler* motion could be based on the exclusion of "more than one group. . . ."

The court asked the prosecutor whether he wished to be heard with respect to whether defense counsel had made a prima facie showing. The prosecutor responded, "I think in regards to the prima facie showing, I would ask that the court . . . find that the defense has not met their burden." The prosecutor continued:

> "I would state for the record that I do believe this particular jury panel was a bit more diverse than I think the majority of jury panels that come in here. And so for that reason, I think any time a prosecutor . . . excuses an individual that is a member of a protected class, I think in this situation there was an unusual—there were more minority groups represented in this [panel]. And so, therefore, simply stating that the prosecution has excused one of those potential minority groups alone is insufficient to make the prima facie showing, and I think [the] defense relied specifically, originally at least, under [*sic*] the assumption that the People had excused several Hispanic jurors. [¶] And I think the court properly corrected [the] defense. And I do believe that there is only one single Hispanic juror at this point that was excused by the prosecution as was one Hispanic juror excused by the defense. That juror would be Juror Number [2] . . . ."

The trial court stated that the defense had not made a prima facie showing with respect to his *Batson*/*Wheeler* motion, noting that the prospective jurors appeared to be of many different races and ethnicities, and that the prosecutor's use of peremptory challenges did not suggest that he was exercising such challenges on the basis of race or ethnicity. Although the trial court had already stated that the defense had not made a prima facie case, the court nevertheless offered the prosecutor an opportunity "to explain

6

what his justification was for excusing Juror Number 26, assuming that there was a prima facie showing."

The prosecutor responded:

"Yes, Your Honor. Well, initially Juror Number 26 was seated behind me to my left. I believe she was seated over here in the corner. And initially, when jurors come in, I attempt to make eye contact with them just to see if they are willing to make eye contact with me.

"I did note that Juror Number 26 was avoiding eye contact with me, at least appeared to be avoiding eye contact with me. I did notice that she was looking an awful lot towards the defense. That was my initial concern with Juror number 26.

" . . . [W]hen we went through the jury questions, she indicated that she was a teacher. And I note that she is rather young in age. And from my experience in previous cases, young teachers tend to be very forgiving people and people who can look past sort of mistakes by other young people such as the defendant. [¶] And so I've had issues in the past with keeping young teachers on my juries. And so that was the second thing that sort of bothered me a little bit about Juror Number 26.

"The third thing was that I didn't necessarily see her engage that much in the voir dire process. I think with [the] defense asking questions and then myself asking questions, I didn't notice—she didn't stand out to me as somebody who was being very forthcoming and providing information. And so that too gave me a bit of a concern.

"I would note that she was seated in the box. I did pass twice, two times while she was seated in the box and was on this jury. I was satisfied at that point with the jury . . . . Unfortunately, defense then proceeded to . . . excuse two other jurors that were very strong—that I perceived as good jurors for myself and for my case.

"I then looked to the next two jurors in line and determined that there was one of those two that I did think I wanted on this jury . . . , and so I made the decision to then excuse . . . Juror Number 26."

7

After listening to the prosecutor's reasons and defense counsel's response, the court denied Garcia's motion, stating:

> "Okay.  The court finds that there has not been a showing by a preponderance of the evidence of purposeful discrimination.  The People have articulated race-neutral explanations for the challenge, and particularly in light of the fact that there were at least two other jurors that remain on the jury[3] and the People had passed in exercising peremptory challenge with those jurors in the box.  The court finds that there has not been a showing that race was a substantial motivating factor.  [¶]  So the defense motion is denied."

The court proceeded to excuse two more jurors for hardship pursuant to the parties' stipulation, after having determined that the trial would extend into the following week.  After excusing these jurors, the court allowed each side two additional peremptory challenges.

When voir dire continued, the prosecution exercised a peremptory challenge as to Juror No. 36.  Defense counsel objected.  The court held a hearing in chambers.  At the hearing, defense counsel explained that he was raising a *Batson/Wheeler* motion based on the fact that Juror No. 36 was African American.   Defense counsel stated that the prosecutor had "exclude[d] the only two black people that were in our entire pool . . . " and that the prosecutor had engaged in only desultory questioning of Juror No. 36, which supported the argument that the prosecutor had used his peremptory challenge in a racially discriminatory manner.

---

3      The court may have intended to state that it appeared that there were two other jurors in the jury box who were possibly Latino.

The trial court noted that the prosecutor had previously exercised peremptory challenges as to Jurors Nos. 11, 17, and 36, all of whom appeared to be African American. The court stated that Juror No. 41 might also have "some African American de[s]cent," but that Juror No. 41 had not yet been questioned in the jury box. The court found that defense counsel had made a prima facie showing based on the prosecutor's challenges to "all three of [the African American] jurors" and asked the prosecutor to provide an explanation for his use of a peremptory challenge to strike Juror No. 36.

The prosecutor provided the following explanation:

> "Juror Number 36 has been sharing a lot of information from the beginning. She was offering up a lot of information, and frankly that was the first concern for me is that she was overly excited to offer very personal information. And I'm not entirely sure why that bothered me, but it did a little bit.
>
> "She indicated yesterday that she was currently seeing a psychiatrist and that she was taking medication. She didn't think that that would have any effect on her ability to sit on this jury. But again, that was something that she mentioned that just kind of gave me pause.
>
> "Again, today she mentioned something about a sister and brother-in-law that were in law enforcement but that she hasn't spoken to in 10 years. And I found that sort of interesting or telling as well that the only law enforcement contact she seemed to have in her family she didn't—she doesn't have contact with them.
>
> "I find her—when the court was questioning her about her previous jury experience, she wasn't entirely sure whether she had even been picked on a jury, had seen any evidence or not. And I found that a little troubling that she didn't even kind of understand whether she had been on a jury or not.
>
> "And so, you know. All of those things together, I found that I noticed that in some of the things that she was saying during court some of the other jurors were kind of—or some of the other potential jurors were kind of, I don't want to say laughing, but I could see that

9

they were taking issue not necessarily in a bad way, but sort of laughing with or at her when she was speaking. [¶] And it just doesn't seem to me that this is the type of person that really would work that well in a group. And so I'm looking for jurors that will work well together and come to a dissuasive [*sic*] decision. [¶] I think all of those little things together, while maybe not one of them stands on its own, I think when we look at the person and we look at everything that she's told us thus far, I think there's sufficient evidence that it wasn't a race-based conclusion at all."

After hearing argument from defense counsel, the court denied Garcia's motion, noting that the prosecutor had provided a race-neutral explanation and stating that the court also had observed that "there was something that was a little off" about Juror No. 36 that "made the other jurors uncomfortable." The court also commented that Juror No. 36 had been "quite forthcoming without questions about quite personal information."

During the selection of the alternate jurors, the prosecutor exercised a peremptory challenge as to Juror No. 41. The defense again objected, and outside the presence of the prospective jury, counsel made a *Batson/Wheeler* motion based on the fact that Juror No. 41 was African American. The court again found that defense counsel had made a prima facie showing, noting that of the 41 jurors who had been subjected to voir dire, the prosecutor had exercised peremptory challenges as to all four potential jurors who appeared be African American. The court asked the prosecutor to provide a justification for his striking Juror No. 41.

10

The prosecution responded in part by stating:

" . . . I want to make sure that this record is quite clear in that there's absolutely no consideration of race involved in any of the decisions that have been made with regards to exercising challenges in this case.  And as offended as defense counsel is by what he perceives as a pattern, I'm equally offended as the prosecutor here who is being accused of this.  [¶]  I want to make sure that we go back and look at this pattern, and I do quotes, pattern, of exercising challenges from what [the] defense says on African Americans.  And I want to make sure that I address each one of them so that the record is crystal clear."

The prosecutor then explained why he had challenged the other three jurors whom the court stated appeared to be African American:

"Juror Number 17.  And I would indicate that early on in the process, [Juror No. 17] indicated that she, in fact, had been a criminal defendant and that [defense counsel] was her attorney.  That . . . should have been a for cause challenge that I should have exercised.  I neglected to do that.  I instead immediately put a mark next to her name that said I can't have her on this jury.

"[¶] . . . .[¶]

"The second one, Juror Number 11, for the record. . . .  I did not take him as being African American [based on his appearance and surname]. . . .

"[¶] . . . [¶]

"[Juror No. 11] immediately from the beginning, again, refused to make any eye contact.  And, in fact, he was actually going out of his way not to look at me.  I think he saw me kept [*sic*] trying [to] make eye contact with him, and he refused to do so.  I just—he made me uncomfortable because of that.  And I kept trying again and again over the course of the day, and he just refused to look at me.  And so I had a problem with that.  [¶]  And then his one word of answers, he didn't really give us a lot to go on."

"[¶] . . . [¶]

11

"With regards to the previous—the last challenge, which was [J]uror Number 36, I already put on the record all of the issues I had with her."

The prosecutor then discussed his reasons for striking Juror No. 41:

"Juror Number 41. Who I see as now the third African American. [¶] And frankly, there's a variety of reasons that [Juror No. 41] is not good for this jury. He is young. He's in school. He has no stake in the community. He's single. He's got sort of an almost aggressive mannerism about him when he is sitting here in court.

"He has mentioned at least three or four times that he has finals next week that he's concerned about. He even said today that he was concerned that his mind was wandering and that he was thinking about those finals.

"He gave one-word answers. He was very short . . . . [W]hen asked about his sister, he indicated she was in law school. And when there was questioning about what she does, his response was very short and almost aggressive, and he said, 'I really don't care what she does.'

"I think his whole attitude is saying I don't want to be here. I'm not going to listen. I'm not really going to care. And that's the way I took it. Okay."

After hearing from defense counsel, the court agreed that Juror No. 41 had displayed an "aggressive manner," that he had been "somewhat aggressive" in his comments about his sister, and that he did not seem to want to be in court. The court found that "all the reasons stated by the prosecution, not just the aggressive manner, are all race-neutral reasons" and denied the motion.

After the trial commenced, outside the presence of the jury, the court stated that it wanted "to make a record of the racial makeup of the jury." The court stated that the seated jury appeared to include individuals representing the following races and

12

ethnicities:  Juror No. 1, Hispanic; Juror No. 5, Asian or Hispanic; Juror No. 8, Asian; Juror No. 9, Asian; Juror No. 12, White or Hispanic; Juror No. 14, Asian.[4]

When the trial court concluded its remarks, the prosecutor indicated that he wanted to state his reasons for exercising a peremptory challenge as to Juror No. 2, "one of the two Hispanic jurors that [he] excused."  The prosecutor explained that he struck Juror No. 2 because she had "close[d] her eyes" at one point during voir dire; "it appeared that she actually dozed for a moment or two."  The prosecutor stated that this incident occurred after the questioning of "jurors that were in the box," and so he made a decision to exercise a peremptory challenge as to Juror No. 2.[5]  The prosecutor also noted that he knew that Juror No. 2 was a nurse, and he thought, "She's probably working long hours, and . . . maybe she doesn't work days and this is her time that she normally sleeps."

After the prosecutor finished speaking, defense counsel noted, "[O]ur jury seems to be predominantly Anglo."  Defense counsel also stated that the court's "recitation of the description [of the] jury is accurate."

---

[4]     The court also stated that it would estimate that approximately "two-thirds of the jury panel or half of the jury panel were noncaucasian."

[5]     It is likely that the prosecutor was referring to the timing of when he saw Juror No. 2 close her eyes, to explain why he had not questioned Juror No. 2 concerning the incident.

C.    *Application*

    1.    *Juror No. 26*

The prosecutor explained that he had exercised a peremptory challenge as to Juror No. 26 for three reasons—(1) she avoided eye contact with the prosecutor and frequently looked in the direction of defense counsel, (2) she was a young teacher, and (3) she had not been "very forthcoming" during voir dire—each of which is a racially neutral and valid ground for exercising a peremptory challenge.[6]  (See *Lenix*, *supra*, 44 Cal.4th at p. 613 ["[a] prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons"]; *People v. Barber* (1988) 200 Cal.App.3d 378, 394  [affirming denial of defendant's *Wheeler* motion and observing "[p]eremptory challenges are often exercised against teachers by prosecutors on the belief they are deemed to be rather liberal"]; *People v. Booker*  (2011) 51 Cal.4th 141, 166 ["The trial court correctly denied defendant's *Batson*/*Wheeler* motion with respect to J.M. because of his less than forthcoming responses on the juror questionnaire and during voir dire"].)

---

[6]    Although the trial court found that defense counsel had not made a prima facie showing, that finding was rendered moot in light of the fact that the prosecutor offered a reason for exercising the peremptory challenge.  (See *People v. Lewis*  (2008) 43 Cal.4th 415, 471 (*Lewis*) [" 'Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot' " [citation].)  Accordingly, we review the trial court's ultimate finding that the prosecutor did not act with discriminatory intent in exercising a peremptory challenge as to Juror No. 26. (See *ibid*.)

Garcia contends that Juror No. 26's "failure to make eye contact is not reflected in the record," and therefore is "not supported." We disagree. Defense counsel did not object to the prosecutor's statements with respect to this issue. Thus, we may infer that the record supports the prosecutor's observations and that the trial court relied upon them. (See *People v. Elliott* (2012) 53 Cal.4th 535, 569 [reviewing court may infer that trial court agreed with prosecutor's statement that prospective juror " 'wouldn't make eye contact with anybody' " where "[d]efense counsel did not deny that [prospective juror] had failed to make eye contact"].)

Garcia contends that the prosecutor's failure to question Juror No. 26 about her experiences as a teacher and the fact that another teacher, Juror No. 4, remained on the jury, supports the inference that the prosecutor acted with a discriminatory intent in challenging Juror No. 26. However, the trial court could have reasonably found that the prosecutor's explanation that he had "had issues in the past with keeping young teachers on my juries" was credible, irrespective of the prosecutor's failure to question Juror No. 26 concerning her experiences as a teacher or of the fact that the prosecutor did not exercise a peremptory challenge as to Juror No. 4. (See, e.g., *People v. Lewis*, *supra*, 43 Cal.4th at p. 476 [noting that while "a party's failure to engage in meaningful voir dire on a topic the party says is important can suggest the stated reason is pretextual," the factor is not dispositive, and concluding "the prosecutor's failure to question [a stricken juror] on voir dire does not undermine the trial court's conclusion that the prosecutor's stated reasons for striking her were not pretextual"]; *Lenix, supra*, 44 Cal.4th at p. 622 [noting that "comparative juror analysis on a cold appellate record has inherent limitations"].)

15

Garcia also appears to suggest that the fact that the prosecutor exercised a peremptory challenge as to Juror No. 2, who appeared to the prosecutor to be Hispanic, supports an inference of discriminatory intent.[7] However, the probative value of the prosecutor's striking of one Hispanic potential juror is slight, particularly in light of the fact that three individuals who appeared to the court to possibly be Hispanic remained on the jury.

Finally, Garcia suggests that the fact that the prosecutor stated that he was satisfied with the potential jury prior to exercising a peremptory challenge as to Juror No. 26 reflects a discriminatory intent. We disagree. The prosecutor exercised a peremptory challenge as to Juror No. 26 only *after* defense counsel changed the composition of the potential jury by exercising a peremptory challenge. "[T]he selection of a jury is a fluid process, with challenges for cause and peremptory strikes continually changing the composition of the jury before it is finally empanelled." (*Lenix, supra*, 44 Cal.4th at p. 623.) Thus, the fact that Juror No. 26 was at one point acceptable to the prosecutor, but later became the subject of a peremptory challenge, does not support the inference that the prosecutor exercised that challenge for a racially discriminatory reason.

---

[7] Garcia also appears to contend that the prosecutor acted with a discriminatory intent in excluding Juror No. 2. However, because he failed to raise this claim in the trial court, he may not raise the claim on appeal. (See *People v. Lewis, supra*, 43 Cal.4th at p. 481 ["The failure to articulate clearly a *Wheeler/Batson* objection forfeits the issue for appeal"].) Nor may we evaluate the prosecutor's stated reasons for striking Juror No. 2, as part of a comparative juror analysis that Garcia urges on appeal, since those reasons were not before the trial court at the time the court ruled on Garcia's *Batson/Wheeler* motion as to Juror No. 26. (*Lenix, supra*, 44 Cal.4th at p. 624 ["the trial court's finding is reviewed on the record as it stands at the time the *Wheeler/Batson* ruling is made"].)

16

2.    *Juror No. 36*

The prosecutor offered several reasons for striking Juror No. 36, including that she appeared to have been "overly excited" to share "very personal information," she was seeing a psychiatrist and taking medication, she had siblings in law enforcement with whom she had not spoken in many years, and she was unsure whether she had previously served on a jury.  In addition, the prosecutor noted that some of the other jurors appeared to have been laughing at Juror No. 36's responses during voir dire.  Garcia does not contend that any of these racially neutral reasons is not supported by evidence in the record, and does not challenge the trial court's statement that "there was something that was a little off" about Juror No. 36 that "made the other jurors uncomfortable."

While Garcia is correct to the extent he argues that the fact that the prosecutor's pattern of exercising challenges as to the African American jurors on the panel supports an inference of discrimination (see, e.g., *Wheeler, supra*, 22 Cal.3d at p. 280 [party may show discriminatory use of peremptory challenges by demonstrating that "opponent has struck most or all of the members of the identified group from the venire"]),[8] the trial court reasonably found that this inference was dispelled by the numerous nondiscriminatory reasons that the prosecutor offered for his challenge to Juror No. 36.[9]

---

[8]    The trial court found that the prosecutor had exercised challenges to "all three of [the African American] jurors" who had been questioned at the time the prosecutor exercised a peremptory challenge as to Juror No. 36.

[9]    Garcia also argues that the prosecutor's stated reasons for challenging Juror Nos. 41, 11, and 2 were pretextual.  Because the prosecutor's reasons for striking Juror Nos. 41, 11, and 2 were not before the trial court at the time the trial court ruled on Garcia's

17

### 3.    *Juror No. 41*

The prosecutor stated that there were "a variety of reasons" for challenging Juror No. 41, including that he had little stake in the community, that he was single, in school, and young; he had an "aggressive" mannerism; he gave curt answers; he appeared aggressive with respect to questions concerning what his sister was studying in law school; and he generally manifested an attitude that indicated that he would rather not be serving on a jury. Garcia does not contend that any of these racially neutral reasons is not supported by evidence in the record and does not challenge the trial court's findings that Juror Number 41 had an "aggressive manner," was "somewhat aggressive" in his comments about his sister, and did not seem to want to be in court.

Garcia does suggest that the prosecutor's proffered reason that he was concerned that Juror No. 41 would be unable to focus on the case in light of his pending school examinations was pretextual, noting that the prosecutor had sought to keep another juror, Juror No. 32, who had indicated that she might have difficulty giving the case her full attention in light of her work obligations. However, Juror No. 32 made other statements during voir dire that likely made her an appealing potential juror to the prosecutor. For example, Juror No. 32 questioned whether the beyond a reasonable doubt standard was simply a "technicality" when "it's obvious that someone did something that they [i.e. the

---

*Batson/Wheeler* motion as to Juror No. 36, they may not be considered in evaluating the court's ruling as to Juror No. 36.  (See *Lenix, supra*, 44 Cal.4th at p. 624.)

18

prosecution] are saying they did."[10] Garcia's comparative juror analysis is thus not persuasive. (See *Lenix, supra*, 44 Cal.4th at p. 624 ["Two panelists might give a similar answer on a given point. Yet the risk posed by one panelist might be offset by other answers, behavior, attitudes or experiences that make one juror, on balance, more or less desirable. These realities, and the complexity of human nature, make a formulaic comparison of isolated responses an exceptionally poor medium to overturn a trial court's factual finding."].)

Finally, Garcia contends that the prosecutor's reasons for challenging each of four African Americans on the jury panel do "not appear to be genuine." We disagree. With respect to Juror No. 17, the prosecutor explained that she had been a criminal defendant and that defense counsel had been her attorney. This reason is entirely reasonable, and Garcia does not contend to the contrary. Garcia objects to the prosecutor's reliance on a lack of eye contact with respect to another prospective juror who appeared to possibly be African American, Juror No. 11. However, defense counsel did not object to the prosecutor's statements with respect to this issue. We may therefore infer that the prosecutor's observations were accurate and that the trial court relied on them. (See *People v. Elliott, supra,* 53 Cal.4th at p. 569.)

We have addressed in the text above the numerous nondiscriminatory reasons that the prosecutor offered for exercising peremptory challenges to the final two African

---

[10] The defense eventually exercised a peremptory challenge as to Juror No. 32.

American jurors, Juror Nos. 36 and 41, none of which Garcia has established were pretextual.

Accordingly, we conclude that the trial court did not err in denying Garcia's three *Batson/Wheeler* motions.

## IV.

## DISPOSITION

The judgment is affirmed.

                                                              AARON, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

20